SMITH v. CHEBOYGAN STATE SAVINGS BANK.

1. WORK AND LABOR—IMPLIED CONTRACT—EXPECTATION OF PAY.
   An implied contract for payment of services rendered will not be found except as the services are rendered under such circumstances as justifies the conclusion that the party who renders the services expects to be paid by the one charged, and that the latter was aware of such expectation, or in the exercise of reasonable care and judgment should have understood such to be the fact.

2. CONTRACTS—IMPLIED IN FACT—MEETING OF MINDS.
   A contract implied in fact does not exist unless the minds of the parties meet by reason of words or conduct.

3. SAME—IMPLIED IN LAW—INTENT.
   A contract implied in law is quasi or constructive, and does not require a meeting of minds but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended.

4. Work and Labor—Implied Contract—Evidence.

   In action against bank and its president who had also acted as
   conservator of predecessor bank's assets for services claimed
   to have been rendered by plaintiff, record *held*, without evi-
   dence that president was personally liable for such services
   rendered by plaintiff while otherwise employed by president
   who also operated a grocery.

Appeal from Cheboygan; Sprague (Victor D.), J.
Submitted January 3, 1940. (Docket No. 42, Calen-
dar No. 40,849.) Decided April 1, 1940. Rehear-
ing denied June 18, 1940.

Assumpsit by Raymond C. Smith against Cheboy-
gan State Savings Bank and Fred A. Haut for per-
sonal services rendered. From verdict and judg-
ment for plaintiff against defendant Haut, he ap-
peals. Reversed without a new trial.

*Crawford S. Reilley,* for plaintiff.

*Lewis E. Berry,* for defendant Haut.

North, J. Plaintiff, Raymond C. Smith, brought
this suit in assumpsit to recover for services which
he claims to have rendered to the defendants. Lia-
bility was denied by each of the defendants. The
case was tried by a jury and a verdict rendered of
no cause of action as against the Cheboygan State
Savings Bank, but there was verdict for $4,000
against defendant Haut. The amount of the verdict
against Haut was subsequently reduced by the trial
judge to $2,560. Judgment was entered accordingly.
By the verdict and judgment it was also adjudicated
that plaintiff was the owner of 10 shares of stock
which Haut formerly held in the defendant bank.
Plaintiff has not appealed from the verdict and judg-

ment releasing the bank, but defendant Haut has appealed from the judgment in favor of plaintiff.

Throughout the period over which the controversy extends, Mr. Haut owned and operated the Haut Grocery Company at Cheboygan, Michigan. He was also connected with the Cheboygan State Savings Bank during that period. Prior to 1919 Smith had been employed by the bank and was familiar with its business. In 1919 he was employed by Mr. Haut, at first as a bookkeeper for the grocery company but later on he seems to some extent to have acted more in the capacity of an assistant manager or confidential secretary of Mr. Haut. Until April 1, 1933, he received a salary of $225 per month; and thereafter until his employment was terminated October 28, 1936, his compensation was $40 per week. Plaintiff admits payment in full for services rendered to the grocery company and that when discharged he was paid by Mr. Haut for two additional months.

The defendant bank on the 27th day of March, 1933, was placed under a conservator, Mr. Haut acting in that capacity. This condition continued as to certain segregated assets until April, 1935, at which time Mr. Haut was discharged as conservator; but he continued his activities as president of the re-opened bank. The bank resumed business July 17, 1933. Thereafter, Mr. Haut was not only president but he was also the principal stockholder in the bank. On or about April 12, 1933, he directed Mr. Smith to "look after the bonds" which were held among the bank's assets. Plaintiff claims from that time on until his discharge, October 28, 1936, he not only rendered the services to the grocery company where he was on full time employment, but he continued to serve the bank. He claims such service was not only looking after the bonds but an active participation in

the general management of the bank, and that this service extended over a period of 178 weeks. He testified:

"During that time, I had supervision all the time. * * * I didn't necessarily go to the bank every day. I had all my records up to the grocery store."

It is plaintiff's claim that his handling of the bank's bond investments resulted in a substantial profit. On some occasions he made trips to other cities incident to transacting the bank's bond business and on such trips his expenses were paid by the bank, but his salary was paid by the Haut Grocery Company. Mr. Haut "gave" plaintiff 10 shares of the bank's stock in February, 1934, valued at $1,000. The former claims that this was only for the purpose of qualifying the latter to act as a bank director, but Smith claims that this was a payment on account to him for services he was rendering to Haut or the bank. In any event, Smith thereafter served as a director of the bank and had full knowledge of the bank's activities.

The theory of the defense is embodied in the motion made for a directed verdict at the close of plaintiff's proof and at the close of all the proofs; and also in the motion of defendant Haut for judgment *non obstante veredicto.* We quote from the motion for directed verdict:

"I also at this time desire to move the court for a directed verdict as to the defendant Fred A. Haut by reason of the fact that the testimony and evidence in this case discloses that the services which were performed by Mr. Smith for Mr. Haut were performed for him as conservator of the bank; and that so far as the services rendered by Mr. Smith after the discharge of the conservator, there has been no showing or nothing to bind Mr. Haut individually

for those services, if there were services rendered; and if under the theory of the plaintiff's case there was a legal contract, that contract would be and is between the Cheboygan State Savings Bank and Raymond C. Smith.''

There having been no appeal from the judgment entered in the circuit court in favor of the bank, the controlling question presented by this appeal is whether under the testimony an issue of fact for determination by the jury was presented as to Mr. Haut's liability to plaintiff.

Under the record it is clear that the only theory upon which plaintiff can assert a right to recover is that outlined in his reply to the answer of defendant Haut. Plaintiff therein alleges:

"That said services were rendered to and in behalf of said defendant, Cheboygan State Savings Bank at the request of Fred A. Haut, the president thereof, and that if said president of said bank had no authority, therefore, he is personally liable for the services thus rendered; plaintiff denies that any payments made by the said Fred A. Haut to him were in payment of his services rendered in behalf of the defendant Cheboygan State Savings Bank.''

Plaintiff admits he was under full time employment by the Haut Grocery Company and that he was paid in full for such services. However, he testified that much of his work incident to the bank's affairs was done outside of his regular hours of employment and that he expected to receive pay for that work. But there is no testimony of an express hiring of plaintiff by defendant Haut to do extra work, nor is there any testimony tending to show that there was an intent or expectation on the part of Mr. Haut to pay plaintiff for services rendered by him for the

bank. The following is from plaintiff's testimony on direct examination:

"*Q.* Now, as I gather from what you have told me and what testimony you have given on the stand, there never was any arrangement between you and Mr. Haut or between you and the bank as to the amount of wages or compensation that they were going to give you for the work that you did there for them?

"*A.* No arrangement."

While plaintiff began the work for which he now seeks compensation in April, 1933, and seems to have done most of his overtime work within a few months thereafter, still he made no request or demand for additional pay until after he was discharged in October, 1936. He was present at the January, 1936, meeting of the bank directors when salaries of bank officials were fixed by resolution, but he neither requested nor intimated that he expected pay in addition to that he was receiving from the Haut Grocery Company. While he testified concerning the 10 shares of bank stock which he received from defendant Haut that: "I treated them as applying upon my account for services," still in this connection on direct examination he also testified:

"*Q.* What was Mr. Haut's statement or proposition about the issuance of the stock to you?

"*A.* I believe the first that was said, he wanted me to be on the board of directors and in order to do so, I must have stock.

"*Q.* When was that?

"*A.* That was early in 1934. * * *

"*Q.* After you received that, then was there anything said by him in connection with the 10 shares of stock, as to why he turned over the 10 shares of stock, previous to the time you were discharged by him?

"*A.* Why, I think I remarked, 'What is this?' and he says, 'I told you I gave you 10 shares of stock.'

"*Q.* How did you treat those 10 shares of stock, having received the same without paying for them?

"*A.* I treated them as applying upon my account for services.

"*Q.* Did he ever demand the 10 shares back?

"*A.* No, sir."

While there may be sufficient testimony in this record to sustain the jury's verdict as to ownership in plaintiff of the 10 shares of bank stock on the theory that it was a gift from defendant Haut to plaintiff to qualify the latter to act as a director of the bank, we find no testimony that would tend in any way to sustain a finding that Mr. Haut ever intended this stock should be considered as part payment to plaintiff for extra services rendered by him incident to the business of the bank or that defendant Haut had any knowledge that plaintiff received the same with any such understanding.

Unquestionably it is plaintiff's theory that the services for which he seeks recovery were performed for the bank. He so alleged and so testified. He does not assert right of recovery upon an express contract. An implied contract will not be found except the services are rendered under such circumstances as justifies the conclusion that the party who renders the services expects to be paid by the one charged and that the latter was aware of such expectation or in the exercise of reasonable care and judgment should have understood such to be the fact. *Spence* v. *Sturgis Steel Go-Cart Co.,* 217 Mich. 147.

"There are two kinds of implied contracts: one implied in fact, and the other implied in law. The first does not exist unless the minds of the parties

meet, by reason of words or conduct. The second is *quasi* or constructive, and does not require a meeting of minds, but is imposed by fiction of law, to enable justice to be accomplished, even in case no contract was intended.

"In order to afford the remedy demanded by exact justice and adjust such remedy to a cause of action, the law sometimes indulges in the fiction of a *quasi* or constructive contract, with an implied obligation to pay for benefits received. The courts, however, employ the fiction with caution, and will never permit it in cases where contracts, implied in fact, must be established, or substitute one promisor or debtor for another." *Cascaden* v. *Magryta,* 247 Mich. 267.

The only issue we pass upon on this appeal is whether there was any testimony tending to establish plaintiff's claim that defendant Haut was personally liable for services rendered by plaintiff to the bank or to its conservator. The record contains no such testimony. It follows that the trial judge was in error in denying defendant Haut's motions for a directed verdict and for judgment *non obstante veredicto.* Appellant pleaded the statute of frauds, but under this record consideration of that defense is not necessary to decision. The judgment entered in the circuit court is reversed, without a new trial.

BUSHNELL, C. J., and SHARPE, POTTER, CHANDLER, McALLISTER, WIEST, and BUTZEL, JJ., concurred.